**ZINGALE, Plaintiff-Appellee, v. AMERICAN SURETY COMPANY OF NEW YORK, a Corporation, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24230. Decided December 11, 1957.

Paul Mancino, for plaintiff-appellee.

Squire, Sanders & Dempsey, George I. Meisel, of Counsel, for defendant-appellant.

## OPINION

By SKEEL, PJ.:

This appeal comes to this court on questions of law from a judgment entered for the plaintiff in the Municipal Court of Cleveland, the issues being tried to the court, trial by jury not having been demanded as provided by §1901.24 R. C., supplemented by rule of court. The action is one in contract.

The plaintiff is a plumbing contractor. Under the allegations of the petition, the plaintiff purchased from the defendant two policies of public liability insurance, insuring said plaintiff either as a plumbing contractor or sub-contractor in construction operations throughout Cuyahoga County with limits of $10,000 to $20,000 for personal injury and $10,000 to $25,000 for property damage. The first policy covered a period of one year, beginning May 22, 1950. The plaintiff contracted for a like policy of insurance for a period of one year beginning May 22, 1951.

The plaintiff alleges that in the year 1950, he entered into a contract and performed the work and furnished the materials and fixtures as a sub-contractor for the plumbing work in a house situated and being constructed at 3905 Faversham Road, University Heights. The plaintiff's plumbing contract was with Joseph Costanzo as builder and owner. The work was fully completed in April of 1951. The contract specifically included the installation of a toilet which contained a fixture or part commonly known as a trip (flushing) lever. Thereafter, in May of 1952, the plaintiff (with others) was made a defendant in an action for damages for injuries sustained by one Jacqueline Bialosky (whose husband purchased the residence at 3905 Faversham Road, University Heights, after its completion) because of injuries she is alleged to have sustained when the trip lever broke while she was attempting to flush the toilet.

It is alleged that as a result of such lawsuit, plaintiff expended money totaling $622.33, by contributing to a settlement of the case and the court costs and the cost of depositions and attorney fees, which amount is claimed to be due this plaintiff under the obligations of the policies of insurance above described.

The defendant's answer admits the allegations with regard to the policies of insurance as alleged in the petition but denies the expenditure of monies as alleged and further denies that it failed to carry out its contractual obligations under its policies of insurance.

The defendant also alleged that in the cause of action filed by

Jacqueline Bialosky, she claimed to have been injured by a defectively constructed trip lever which broke as she was attempting to flush the toilet. Further, it is alleged that the injury was sustained January 4, 1952, and that the action was filed against the general contractor, this plaintiff as the sub-contractor doing the plumbing work and furnishing the plumbing fixtures and the McKee Plumbing Supply Company, from whom the plaintiff purchased the fixture, the defective condition of which is alleged to have caused her injury. The claims of negligence in her petition are that the plaintiff herein installed an imperfect brittle plumbing fixture known as a trip lever, which was inherently dangerous, in failing to install a proper and adequate trip lever and to warn her of the dangerous condition of said lever or to inspect the same to determine its dangerous condition and in coating such lever with a polished material to concal its defective condition.

This defendant then alleges that the first policy of insurance was designated as a Manufacturers and Contractors Policy and was issued to the plaintiff for a period of one year, beginning May 22, 1950, and the second policy was issued May 22, 1951 for a like period, and that each contained the following specific provision:

"This policy applies only to accidents which occur during the policy period within the United States of America, Canada and Newfoundland."

It is also alleged that the defendant's liability under the policies pleaded was limited to two of the subjects or divisions (five in number are contained in the policy form) as indicated by specific designation and that the area of each division for which coverage was contracted for is clearly defined in the policy.

The two divisions under which coverage was purchased were (1) Premises-Operations, and (3) Independent Contractors. The three divisions of the policy under which coverage was not purchased were (2) Elevators (4) Products and (5) Contractual. It is pleaded that under the "Definition of Hazards" the policy provides as follows:

"Division 1. Premises-Operations. The ownership, maintenance or use of the premises, and all operations during the policy period which are necessary or incidental thereto.

"Division 2. Elevators. The ownership, maintenance or use, for the purposes stated in the declarations, of any elevator therein designated.

"Division 3. Independent Contractors During the Policy Period. Operations performed by independent contractors and omissions or supervisory acts of the insured in connection with work performed for the named insured by independent contractors, except maintenance or ordinary alterations and repairs on premises owned or rented by the named insured.

"Division 4. Products. The handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured, except equipment or other property rented to or located for the use of others but not sold; and operations covered under divisions 1 and 3 of the Definition of Hazards, other than pick-up and delivery and the existence of tools, uninstalled

equipment and abandoned or unused materials, if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from such premises.

"Division 5. Contractual. The express undertakings of the named insured designated in the declarations."

This policy also provided:

"This policy does not apply:

"(a) Under division 1 of the Definitions of Hazards, to:

"(1) * * *

"(2) * * *

"(3) Operations, * * * if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from premises owned, rented or controlled by the insured.

"(b) * * *

"(c) * * *

"(d) Under divisions 1 and 3 of the Definition of Hazards, to liability with respect to which insurance is or can be offered under division 4 (products) of the Definition of Hazards; or to operations on or from other premises which are owned, rented or controlled by the insured."

The defendant then denies any obligations to the plaintiff for claims made against him by Jacqualine Bialosky because of an accident occurring January 4, 1952 or claims in defending such action because by the provisions of the policy that expired May 22, 1951, the policy applied only to accidents which occurred during the policy period. That the injuries for which this claim is made occurred after all operations or work of the plaintiff at 3905 Faversham Road, University Heights, had been completed and that both policies described in the pleadings contained specific provisions that the insurance designated "Premises-Operations" did not apply to any accident occurring after operations being performed by the insured had been completed or abandoned at the place of occurrence thereof and away from the premises owned, rented or controlled by the insured. Said policies further provided that any operations of the insured should not be deemed incomplete because improperly or defectively performed or because further operations might be required pursuant to a service or maintenance agreement. It is finally alleged that the plaintiff did not purchase "Products" liability as defined in the policy, such coverage being excluded by the terms of the insurance agreement.

The plaintiff's reply admits the allegations in the answer concerning the suit filed by Jacqueline Bialosky and the effective dates of the policies of insurance. The plaintiff does not deny the provisions of the policies as pleaded in the answer but does deny that he is without coverage for the accident pleaded in his petition under the terms of the said policies.

The defendant claims the following errors:

"1. The Trial Court erred in holding that the accident caused by a defective plumbing fixture, occurring in January 1952, eight months after the installation of the fixture by the plaintiff, was covered by either policy issued by the defendant to the plaintiff.

"2. The Trial Court erred in holding that the defendant was required

to defend the action brought against the plaintiff even though there was no coverage under the insurance contract between the defendant and plaintiff.

"3. The Trial Court erred in holding that since the defendant had protected the interest of the plaintiff in the action brought against him, while defendant was investigating to determine whether there was any possibility of coverage, it could not thereafter, before the plaintiff had been in any way prejudiced, refuse to defend the plaintiff on the grounds of non-coverage."

The facts, by virtue of the admissions in the pleadings, stipulations of fact and uncontradicted evidence, are, for the most part, not in dispute and may be summarized as follows:

1. The defendant issued two policies of casualty insurance to the plaintiff covering personal injury and property damage under two subdivisions of the provisions of the policies—that is: Premises-Operations and Independent Contractors. The only coverage here involved is "operations" defined in the policy as all operations during the policy period which are necessary or incidental thereto. (There is no indication in this case as to which policy issued to the plaintiff is the basis of the action.)

2. The plaintiff, as a plumbing sub-contractor, furnished labor and materials for the plumbing work in a house located in University Heights, which sub-contract included the furnishing and installation of a toilet tank with a trip lever thereto attached.

3. The work was completely finished and material furnished within the term of the first policy of insurance which ended May 22, 1951 at 12:01 A. M. No work was done or material furnished by the plaintiff after that date.

4. The alleged injury to Jacqueline Bialosky by the breaking of the porcelain trip lever of the toilet tank occurred on January 4, 1952.

5. The plaintiff was one of three defendants in an action filed by the injured party seeking $15,000 damage for the alleged injuries, the negligence charged being as above outlined. The accident arose because of a claimed defective condition of the trip lever and not because of the manner of its installation.

6. The other defendants were Joseph Costanzo, the builder, and the McKee Plumbing Supply Company, who sold the toilet, tank and trip lever to this plaintiff.

7. Before trial, the claim of Mrs. Bialosky was settled, this plaintiff contributing $100 to the total amount of the settlement of $550.

8. When defendant was notified of the action against plaintiff, it took some active part in the defense until it concluded, upon investigation, that the alleged injury did not come within the policy coverage.

9. Whereupon on November 11, 1952, the defendant disclaimed any obligation to defend the action or to assume any part of plaintiff's liability, if any, and notification of its disclaimer was sent to the plaintiff by letter of that date, and the pleadings were returned. Such action on the part of the defendant took place before the settlement was negotiated by the plaintiff in conjunction with the other defendants. The settlement was concluded without the knowledge of this defendant.

10. The policy provisions are correctly pleaded as above set forth.

11. There is no evidence in the record dealing with the question of whether or not there was any negligence on the part of any of the defendants (including this plaintiff) in the action of Mrs. Bialosky seeking damages for the alleged defect in the trip lever.

From the record, it is clear the plaintiff purchased insurance coverage under two sub-divisions of the policies of insurance delivered to him. One was "Premises-Operations" dealing with accidents occurring while acting in furtherance of his plumbing business wherever such work was conducted. The other sub-division for which coverage was purchased, included within the provisions of the policy, was "Independent Contractors" which is not involved in this action.

In interpreting the extent of the coverage under the term "Operations" upon which the plaintiff's rights in this case must be determined, all of the applicable provisions of the policy must be considered. The first exclusion under this sub-division (operations) contained in the policy is:

"Operations * * * if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof * * * "

This language, together with the intention expressed by the definition of Hazards in paragraph VI that only accidents which occur during the policy period were protected and under paragraph (d) of "Exclusions" which provides: "This policy does not apply * * *:

"d. Under division 1 (Premises-Operations) * * * to liability with respect to which insurance is or can be afforded under division 4 of the definitions of hazards * * *."

(Division 4 has to do with "Products" coverage which is quoted above.)

It is clear that the policy which plaintiff purchased included under the Definitions of Hazards, in addition to public liability with regard to his own premises, protection while work that the plaintiff had contracted to do was in progress at any location where it required him to be or the work to be done. Also, as to this category, if sub-division No. 4 would or could have insured against the hazard, then the provision of the policy protecting "Operations" would not apply. The provisions of the policy as to the coverage afforded are clear and unambiguous.

The first policy issued for casualty coverage was for one year beginning May 22, 1950, so that where the alleged injury occurred after the policy expired, it does not come within the terms of the policy unless protection was purchased for "Products" liability as distinguished from "Operations." An injury not directly attributable to the insured's work after operations had been concluded was excluded from the provisions of the policy. It was, in fact, so far as the admitted facts in the case are concerned, an insurance policy protecting against the hazards of "operations" and not "products."

Some claim is made that the plaintiff, depending on the knowledge of the defendant (through its agent) of plaintiff's business, and his insurance needs, could reply on the defendant to writ a policy affording complete protection, including the hazard here involved. If this be so then the plaintiff should have sought reformation of the policy to provide

the protection claimed before seeking damage for coverage clearly not within the terms of the policy delivered.

Nor can the provisions of the second policy have application here. All "operations" with respect to the plumbing work in the Bialosky residence at 3905 Faversham Road, University Heights, has been completed before the beginning of the policy period.

For the foregoing reasons, the judgment of the Municipal Court of Cleveland is reversed and final judgment entered for the defendant.

Exceptions noted.

HURD, and KOVACHY, JJ, concur.